# 23-845

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

SOHEIL ZAERPOUR,

*Plaintiff-Appellant,*

PEOPLE OF THE UNITED STATES OF AMERICA,

*Plaintiff,*

—against—

BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., BARCLAYS BANK PLC, BARCLAYS PLC, BNP PARIBAS GROUP, BNP PARIBUS USA, INC., BNP PARIBAS S.A., BNP PARIBAS SECURITIES CORP., CITIGROUP, INC., CITIBANK N.A., CITIGROUP GLOBAL MARKETS INC, CREDIT SUISSE GROUP AG, CREDIT SUISSE INTERNATIONAL, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE

*(Caption continued on inside cover)*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
CASE NO. 1:23-CV-00040-LTS

## BRIEF OF DEFENDANTS-APPELLEES

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-7116

*Attorneys for Defendants-Appellees
Bank of America Corporation,
Bank of America, N.A., and
Merrill Lynch, Pierce, Fenner
& Smith Incorporated*

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1097

*Attorneys for Defendants-Appellees
Citigroup Inc., Citibank, N.A., and
Citigroup Global Markets Inc.*

*(Counsel continued on inside cover)*

BANK AG, DEUTSCHE BANK SECURITIES INCORPORATED, THE GOLDMAN SACHS GROUP INC., GOLDMAN, SACHS & CO. LLC, HSBC HOLDINGS PLC, HSBC BANK PLC, HSBC NORTH AMERICA HOLDINGS, INC., HSBC BANK USA, N.A., HSBC SECURITIES (USA) INC., J.P. MORGAN BANK & CO., J.P. MORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, MERRILL LYNCH PIERCE FENNER & SMITH, INC., MUFG BANK, LTD., MUFG SECURITIES AMERICAS INC., MORGAN STANLEY, MORGAN STANLEY & CO., LLC, MORGAN STANLEY & CO. INTERNATIONAL, PLC, NATWEST MARKETS SECURITIES INC., RBC CAPITAL MARKETS, LLC, ROYAL BANK OF CANADA, ROYAL BANK OF SCOTLAND PLC, SG AMERICAS SECURITIES LLC, SOCIETE GENERALE S.A., STANDARD CHARTERED BANK, STANDARD CHARTERED SECURITIES (NORTH AMERICA) INC., UBS AG, UBS SECURITIES LLC,

*Defendants-Appellees*

---

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants-Appellees Barclays Bank PLC, Barclays PLC, and Barclays Capital Inc.*

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300

*Attorneys for Defendants-Appellees BNP Paribas (identified in the Amended Complaint as "BNP Paribas S.A." and "BNP Paribas Group"), BNP Paribas USA, Inc., and BNP Paribas Securities Corp.*

CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
(212) 701-3435

*Attorneys for Defendants-Appellees Credit Suisse Group AG, Credit Suisse International, and Credit Suisse Securities (USA) LLC*

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006
(202) 626-2992

*Attorneys for Defendants-Appellees Deutsche Bank AG and Deutsche Bank Securities Inc.*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2085

*Attorneys for Defendants-Appellees The Goldman Sachs Group, Inc. and Goldman Sachs & Co. LLC*

LOCKE LORD LLP
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
(312) 443-0472

2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8614

*Attorneys for Defendant-Appellee HSBC Bank USA, N.A.*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3834

*Attorneys for Defendants-Appellees JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and J.P. Morgan Securities LLC*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

*Attorneys for Defendants-Appellees MUFG Bank, Ltd. and MUFG Securities Americas Inc.*

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1388

*Attorneys for Defendants-Appellees*
*Morgan Stanley, Morgan Stanley*
*& Co., LLC, and Morgan Stanley*
*& Co. International plc*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4292

*Attorneys for Defendants-Appellees*
*NatWest Markets Securities Inc.*
*and the Royal Bank of Scotland PLC*
*(n/k/a NatWest Markets Plc)*

MOORE AND VAN ALLEN PLLC
100 N. Tryon Street, Suite 4700
Charlotte, North Carolina 28202
(704) 331-3602

*Attorneys for Defendants-Appellees*
*Royal Bank of Canada and*
*RBC Capital Markets, LLC*

LINKLATERS LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 903-9000

601 13th St. NW, Suite 400
Washington, DC 20005
(202) 654-9200

*Attorneys for Defendants-Appellees*
*Société Générale (identified in the*
*Amended Complaint as "Societe*
*Generale S.A.") and SG Americas*
*Securities LLC*

HERBERT SMITH FREEHILLS
NEW YORK LLP
450 Lexington Avenue
New York, New York 10017
(917) 542-7600

*Attorneys for Defendants-Appellees*
*Standard Chartered Bank and*
*Standard Chartered Securities*
*(North America), LLC (formerly*
*Standard Chartered Securities*
*(North America), Inc.)*

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
(212) 351-2301

*Attorneys for Defendants-Appellees*
*UBS AG and UBS Securities LLC\**

---

\* Although Appellant also named UBS Group AG in his appeal forms, that entity is not listed as a defendant on the district court docket or on appeal.

# CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned Defendants-Appellees make the following disclosures:

## Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith, Inc.

Bank of America Corporation is a publicly held company whose shares are traded on the New York Stock Exchange and has no parent corporation. Based on the U.S. Securities and Exchange Commission Rules regarding beneficial ownership, Berkshire Hathaway Inc., 3555 Farnam Street, Omaha, Nebraska 68131, beneficially owns greater than 10 percent of Bank of America Corporation's outstanding common stock.

Bank of America, N.A. is a direct, wholly owned subsidiary of BAC North America Holding Company. BAC North America Holding Company is a direct, wholly owned subsidiary of NB Holdings Corporation. NB Holdings Corporation is a direct, wholly owned subsidiary of Bank of America Corporation.

Merrill Lynch, Pierce, Fenner & Smith Incorporated (now known as BofA Securities, Inc.) is a direct, wholly owned subsidiary of NB Holdings Corporation. NB Holdings Corporation is a direct, wholly owned subsidiary of Bank of America Corporation.

**Barclays PLC, Barclays Bank PLC, and Barclays Capital Inc.**

Barclays PLC is a publicly held corporation. Barclays PLC has no parent corporation, and no publicly held company owns 10 percent or more of its stock.

Barclays Bank PLC is a wholly-owned subsidiary of Barclays PLC.

Barclays Capital Inc. identifies the following as parent corporations or publicly held corporations that directly or indirectly own 10 percent or more of any class of its equity interests: Barclays PLC, Barclays Bank PLC, Barclays US Holdings Ltd., Barclays US LLC, and Barclays Group US Inc.

**BNP Paribas (identified in the Amended Complaint as "BNP Paribas S.A." and "BNP Paribas Group"), BNP Paribas USA, Inc., and BNP Paribas Securities Corp.**

BNP Paribas is a French banking corporation. BNP Paribas has no parent company and no publicly-held corporation owns 10% or more of its shares. BNP Paribas USA, Inc. is a wholly-owned subsidiary of BNP Paribas. BNP Paribas Securities Corp. is a wholly-owned indirect subsidiary of BNP Paribas.

**Citigroup Inc., Citibank, N.A., and Citigroup Global Markets Inc.**

Citibank, N.A. is a wholly owned subsidiary of Citicorp LLC. Citicorp LLC is a wholly owned subsidiary of Citigroup Inc. Citigroup Global Markets Inc. is a wholly owned subsidiary of Citigroup Financial Products Inc. which, in turn, is a wholly owned subsidiary of Citigroup Global Markets Holdings Inc. which, in turn, is a wholly owned subsidiary of Citigroup Inc. Citigroup Inc., a public

ii

company, is not aware of any publicly held corporation or other entity that

beneficially owns 10 percent or more of the common stock of Citigroup Inc.

### Credit Suisse Group AG, Credit Suisse International, and Credit Suisse Securities (USA) LLC

Defendant-Appellee Credit Suisse Group AG ("CSGAG") has ceased to

exist.  On June 12, 2023, CSGAG merged with and into UBS Group AG, with

UBS Group AG being the absorbing company which continues to operate, and

Credit Suisse Group AG being the absorbed company which ceased to exist.

Defendant-Appellee Credit Suisse International was formerly an indirect wholly

owned subsidiary of CSGAG, and after the merger of  CSGAG with and into UBS

Group AG, Credit Suisse International is an indirect wholly owned subsidiary of

UBS Group AG.  Defendant-Appellee Credit Suisse Securities (USA) LLC is a

wholly owned subsidiary of Credit Suisse (USA), Inc.  Credit Suisse (USA), Inc.

was formerly an indirect wholly owned subsidiary of CSGAG, and after the merger

of  CSGAG with and into UBS Group AG, is an indirect wholly owned subsidiary

of UBS Group AG.  As set forth further below, UBS Group AG has no parent

company, and to its knowledge, no publicly held corporation owns 10 percent or

more of its stock

### Deutsche Bank AG and Deutsche Bank Securities Inc.

Defendant-Appellee  Deutsche  Bank  AG  is  a  publicly-held  corporation

organized under the laws of the Federal Republic of Germany that has no parent

corporation, and no publicly-held company owns 10% or more of Deutsche Bank AG's stock.

Defendant-Appellee Deutsche Bank Securities Inc. is a wholly-owned subsidiary of DB U.S. Financial Markets Holding Corporation, which is a wholly-owned subsidiary of DB USA Corporation, which is a wholly-owned subsidiary of Deutsche Bank AG, a publicly-held banking corporation organized under the laws of the Federal Republic of Germany. No publicly-held corporation owns 10% or more of Deutsche Bank AG's stock.

### The Goldman Sachs Group, Inc. and Goldman Sachs & Co. LLC

The Goldman Sachs Group, Inc. is a corporation organized under the laws of Delaware, and its shares are publicly traded on the New York Stock Exchange. The Goldman Sachs Group, Inc. has no parent corporation, and to the best of The Goldman Sachs Group, Inc.'s knowledge, no publicly held company owns 10% or more of the common stock of The Goldman Sachs Group, Inc. Goldman Sachs & Co. LLC is a wholly-owned subsidiary of The Goldman Sachs Group, Inc., except for de minimis non-voting, non-participating interests held by unaffiliated broker-dealers.

### HSBC Bank USA, N.A.

HSBC Bank USA, N.A. is a wholly owned subsidiary of HSBC USA Inc., which is a wholly owned subsidiary of HSBC North America Holdings Inc., which

iv

is a subsidiary of HSBC Holdings plc.  HSBC Bank plc and HSBC Securities (USA) Inc. are also subsidiaries of HSBC Holdings plc.  HSBC Holdings plc, a publicly held corporation, is not aware of any publicly held company or other entity that owns 10 percent or more of HSBC Holdings plc's stock.

### JPMorgan Chase Bank, N.A., JPMorgan Chase & Co., and J.P. Morgan Securities LLC

JPMorgan Chase Bank, N.A. is a wholly-owned subsidiary of JPMorgan Chase & Co.  J.P. Morgan Securities LLC is an indirect, wholly-owned subsidiary of JPMorgan Chase & Co.  JPMorgan Chase & Co. is a publicly held corporation. JPMorgan Chase & Co. does not have a parent corporation and no publicly held corporation owns 10 percent or more of its stock.  However, The Vanguard Group, Inc., an investment adviser which is not a publicly held corporation, has reported that registered investment companies, other pooled investment vehicles and institutional accounts that it or its subsidiaries sponsor, manage or advise have aggregate ownership under certain regulations of 10 percent or more of the stock of JPMorgan Chase & Co.

### MUFG Bank, Ltd. and MUFG Securities Americas Inc.

Defendant-Appellee MUFG Bank, Ltd. is a wholly-owned subsidiary of Mitsubishi UFJ Financial Group, Inc. ("MUFG Inc.").  MUFG Inc. is a publicly held company that has no parent company, and no other publicly held company owns 10% or more of MUFG Inc.'s stock.

MUFG Securities Americas Inc. is a wholly owned subsidiary of MUFG Americas Holdings Corporation ("MUAH"). MUAH is owned by MUFG Bank, Ltd. and MUFG Inc. MUFG Inc. is a publicly held company that has no parent company, and no publicly held company owns 10% or more of its stock.

**Morgan Stanley, Morgan Stanley & Co., LLC, and Morgan Stanley & Co. International plc**

Morgan Stanley is a publicly-held corporation that has no parent corporation. Morgan Stanley & Co., LLC is a limited liability company whose sole member is Morgan Stanley Capital Management, LLC, a limited liability company whose sole member is Morgan Stanley. Morgan Stanley & Co. International plc is an indirectly wholly owned subsidiary of Morgan Stanley. Based upon Securities and Exchange Commission Rules regarding beneficial ownership, Mitsubishi UFJ Financial Group, Inc., 7-1 Marunouchi 2-Chome, Chiyoda-ku, Tokyo 100-8330, beneficially owns greater than 10% of Morgan Stanley's stock.

**NatWest Markets Securities Inc., Royal Bank of Scotland plc, n/k/a NatWest Markets Plc**

The Royal Bank of Scotland plc (now known as NatWest Markets Plc) is a wholly-owned direct subsidiary of NatWest Group plc. NatWest Group plc is a publicly traded company organized under the laws of Scotland. No publicly held corporation owns 10 percent or more of its stock.

vi

**Royal Bank of Canada and RBC Capital Markets, LLC**

Defendant-Appellee Royal Bank of Canada is a publicly held corporation organized under the laws of Canada. RBC Capital Markets, LLC is an indirect, wholly-owned subsidiary of Royal Bank of Canada. Royal Bank of Canada has no parent company, and no publicly held company owns 10% or more of its stock.

**Société Générale and SG Americas Securities LLC**

Société Générale ("SG") is a publicly traded corporation. SG has no parent company, and no publicly held corporation owns 10 percent or more of its stock. SG Americas Securities LLC is a wholly-owned subsidiary of Société Générale.

**Standard Chartered Bank and Standard Chartered Securities (North America), Inc.**

Standard Chartered Securities (North America), LLC (formerly Standard Chartered Securities (North America), Inc.) is a wholly owned subsidiary of Standard Chartered Holdings Inc., which is a wholly owned subsidiary of Standard Chartered Bank, which is a wholly owned subsidiary of Standard Chartered Holdings Ltd., which is a wholly owned subsidiary of Standard Chartered PLC. No publicly held corporation has notified Standard Chartered PLC of an interest of more than 10% in Standard Chartered PLC's issued ordinary share capital in accordance with the United Kingdom's Financial Conduct Authority's Disclosure and Transparency Rules.

**UBS AG and UBS Securities LLC**

UBS AG is wholly owned by UBS Group AG, a publicly traded corporation. No publicly held corporation holds 10% or more of UBS Group AG stock.

UBS Securities LLC's corporate parents are UBS Americas Holding LLC and UBS Americas Inc., the latter of which is wholly owned by UBS Americas Holding LLC. UBS Americas Holding LLC is a wholly owned subsidiary of UBS AG, which is wholly owned by UBS Group AG, a publicly traded corporation. No publicly held corporation holds 10% or more of UBS Group AG stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENTS ........................................................ i

TABLE OF AUTHORITIES ................................................................. xi

JURISDICTIONAL STATEMENT ......................................................... 1

INTRODUCTION ........................................................................ 1

STATEMENT OF THE ISSUES........................................................... 3

STATEMENT OF THE CASE............................................................. 3

    A.    *Zaerpour I* – The 2013 District of New Jersey Action ....................... 3

    B.    *Zaerpour II* – The 2021 S.D.N.Y. Action (21-cv-9680)..................... 5

    C.    *Zaerpour III* – The 2022 S.D.N.Y. Action (22-cv-7232) ................... 7

    D.    *Zaerpour IV* – The 2023 S.D.N.Y. Action (23-cv-40)........................ 8

    E.    This Appeal ................................................................. 11

STANDARD OF REVIEW ................................................................ 12

SUMMARY OF ARGUMENT ............................................................ 13

ARGUMENT ........................................................................... 14

I.    PLAINTIFF'S ACTION WAS SUBJECT TO DISMISSAL
BECAUSE NO PROCESS WAS PROPERLY SERVED ON ANY
DEFENDANT. ......................................................................... 14

II.    THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S
COMPLAINT AS FRIVOLOUS. ..................................................... 15

III.    THE DISTRICT COURT PROPERLY REFUSED TO GRANT
LEAVE FOR A FURTHER AMENDMENT. ........................................ 17

    A.    The district court reasonably exercised its discretion in refusing
to give plaintiff a fifth attempt to plead viable claims. ..................... 17

B.    Further amendment would have been futile.......................................... 18

1.    All of plaintiff's potential claims would be time-barred. ........ 18

2.    Plaintiff lacks standing to pursue an antitrust claim
because he did not transact directly with defendants............... 22

3.    Plaintiff's constitutional tort and Section 1983 claims are
defective because the alleged defendant conduct was not
state action................................................................................ 23

4.    Plaintiff lacks standing to assert violations of criminal
laws. ......................................................................................... 24

CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Ackerman*,
   549 F. App'x 45 (2d Cir. 2014) ..........................................................21

*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016) ...............................................................23

*Apple Inc. v. Pepper*,
   139 S. Ct. 1514 (2019).........................................................................22

*Ciambriello v. Cnty. of Nassau*,
   292 F.3d 307 (2d Cir. 2002) ...............................................................24

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977).............................................................................22

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000) ..................................................................13

*Diesenhouse v. Soc. Learning & Payments, Inc.*,
   No. 20-CV-7436 (LJL), 2022 WL 3100562 (S.D.N.Y. Aug. 3,
   2022) ....................................................................................................19

*Dynegy Midstream Servs. v. Trammochem*,
   451 F.3d 89 (2d Cir. 2006) ..................................................................14

*Fitzgerald v. First E. Seventh St. Tenants Corp.*,
   221 F.3d 362 (2d Cir. 2000) ...............................................................12

*Frein v. Pelosi*,
   No. 22-1063, 2023 WL 2530453 (2d Cir. Mar. 16, 2023) ...........12, 16

*Ganley v. City of New York*,
   734 F. App'x 784 (2d Cir. 2018) ....................................................12, 18

*Gleason v. Scoppetta*,
   566 Fed. App'x. 65 (2d Cir. 2014) ......................................................23

*Harrison v. Harlem Hosp.*,
    364 F. App'x 686 (2d Cir. 2010) .........................................................19

*Ladner v. Proportional Count Assocs., Inc.*,
    No. 96–CV–2190 (ILG), 2001 WL 1328443 (E.D.N.Y. Sept. 17,
    2001) ....................................................................................................14

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013) ...............................................................16

*Moskowicz v. Richter*,
    No. 17-CV-3074 (WFK)(SJB), 2019 WL 1958287 (E.D.N.Y. May
    2, 2019) ...............................................................................................19

*Neitzke v. Williams*,
    490 U.S. 319 (1989)............................................................................12

*Patterson v. J.P. Morgan Chase Bank*,
    No. 12–CV–2198 (SJE)(GRB), 2013 WL 182813 (E.D.N.Y. Jan.
    16, 2013) .............................................................................................24

*Perpetual Sec., Inc. v. Tang*,
    290 F.3d 132 (2d Cir. 2002) ...............................................................24

*Ruffolo v. Oppenheimer & Co.*,
    987 F.2d 129 (2d Cir. 1993) ...............................................................12

*Sartor v. Toussaint*,
    70 F. App'x 11 (2d Cir. 2002) ............................................................14

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
    22 F.4th 103 (2d Cir. 2021) ................................................................22

*Sheehy v. Brown*,
    335 F. App'x 102 (2d Cir. 2009) .........................................................25

*Simon v. KeySpan Corp.*,
    694 F.3d 196 (2d Cir. 2012) ...............................................................22

*In re Trilegiant Corp., Inc.*,
    11 F. Supp. 3d 82 (D. Conn. 2014), *aff'd*, 889 F.3d 116 (2d Cir.
    2018) ...................................................................................................20

*US Airways, Inc. v. Sabre Holdings Corp.*,
    105 F. Supp. 3d 265 (S.D.N.Y. 2015), *aff'd*, 938 F.3d 43 (2d Cir. 2019) ...................................................................................................19

*Wilson v. General Motors Corp.*,
    190 N.J. 336 (2007) ......................................................................23

*Wright v. Waterside Plaza LLC*,
    No. 07 Civ. 9303 (DC), 2008 WL 872281 (S.D.N.Y. Apr. 2, 2008),
    *aff'd*, 354 F. App'x 594 (2d. Cir. 2009) ..........................................25

## Statutes

15 U.S.C. § 15 ....................................................................................1

15 U.S.C. § 78j ...................................................................................1

18 U.S.C. Chapter 115 .......................................................................25

18 U.S.C. § 249 .................................................................................25

18 U.S.C. § 1030 .........................................................................24, 25

18 U.S.C. § 1348 ...............................................................................25

18 U.S.C. § 1509 ...............................................................................25

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 1331 .................................................................................1

28 U.S.C. § 1915(a)(3) ......................................................................11

42 U.S.C. § 1983 .........................................................................19, 23

42 U.S.C. § 1985 ...............................................................................19

## Other Authorities

Federal Rule of Civil Procedure 4(h)(1) ..............................................7

Federal Rule of Civil Procedure 8 ......................................................9

2d Cir. Local Rule 30.1(g) ..................................................................1

## JURISDICTIONAL STATEMENT

Based upon plaintiff's pleadings, appellees believe the district court had federal question subject matter jurisdiction over this action because plaintiff purported to assert, among other things, claims alleging violations of federal antitrust and securities laws, as well as torts supposedly arising under the U.S. Constitution. *See* 28 U.S.C. § 1331; 15 U.S.C. §§ 15, 78j. (Appellees' Supplemental Appendix ("ASA")[1]-30, 199.) The district court issued a final order and judgment dismissing plaintiff's action, S.D.N.Y. Case No. 23-cv-40, in its entirety on May 3, 2023. (ASA-213-18); *see* 28 U.S.C. § 1291. Plaintiff filed a notice of appeal on May 26, 2023. (ASA-219.)

## INTRODUCTION

Plaintiff Soheil Zaerpour has alleged that a large group of banks engaged in a conspiracy to make prices in the global foreign currency exchange ("FX") market move in "an exact reverse" of his individual FX trades "all the time" for a period of several years. He surmises that defendants were motivated by antipathy to "plans for World Peace" that he supposedly has "communicated to the World

---

[1] Appellees are submitting a Supplemental Appendix pursuant to Second Circuit Local Rule 30.1(g) because the "Appendix" filed by Mr. Zaerpour (2d Cir. Appeal No. 23-845, Doc. 116) ("Zaerpour Appx.") does not include relevant documents and was not prepared in consultation with Appellees as contemplated by this Court's rules and the Federal Rules of Appellate Procedure.

leaders since 1985." He asserts that defendants' alleged conduct violated federal antitrust and securities laws, federal criminal statutes, and the U.S. Constitution.

The district court properly dismissed Mr. Zaerpour's claims as frivolous, aptly observing that "[t]he allegations that Plaintiff's trading activity predicted the movements of the entire Forex market, due to a banking cartel conspiracy, are wholly incredible." (ASA-217.) The district court's dismissal should also be affirmed because no process in this action was ever served on any defendant, even though the dismissal order below was not based on this independent defect.

The district court also correctly denied plaintiff further leave to amend in light of obvious futility. There is no basis to believe that plaintiff could have made his far-fetched claims any less incredible by restating them in a further revised pleading. And it is also clear that—even if plaintiff could properly serve process and somehow remedy the inherent implausibility of his allegations—his claims would be barred as a matter of law for many additional incurable reasons, including because: (a) any possible cause of action plaintiff might assert would be time-barred since he was aware of the alleged material facts underlying his claims no later than 2013, and as early as 2005; (b) plaintiff did not transact in FX directly with defendants and therefore lacks antitrust standing; (c) defendants are not state actors who could be sued on constitutional tort claims; and (d) plaintiff lacks standing to prosecute alleged violations of criminal statutes.

2

This district court's decision dismissing plaintiff's action without further leave to amend should be affirmed.

## STATEMENT OF THE ISSUES

1. Should this action be dismissed where there is no evidence that process was ever served on any defendant?

2. Did the district court properly dismiss this action as frivolous where plaintiff alleged an utterly implausible and factually unsupported conspiracy among large banks across the globe to make the entire FX market move in an "exact reverse" of his personal trading positions?

3. Did the district court properly deny leave for another amended pleading based on futility where plaintiff's claims were also barred as a matter of law for multiple additional and independent reasons, including because plaintiff (a) cannot recover under any potential liability theory due to statutes of limitations; (b) did not transact directly with defendants and thus lacks standing to pursue antitrust claims; (c) cannot state a constitutional tort claim because defendants' conduct was not state action; and (d) lacks standing to assert violations of criminal laws?

## STATEMENT OF THE CASE

This appeal arises from Chief Judge Swain's order dismissing without further leave to replead the amended complaint filed by plaintiff in S.D.N.Y. Case No. 23-cv-40. This was the fourth in a series of closely related actions by which plaintiff has attempted to continue litigating similar allegations and claims. The atypical procedural history of these four actions is explained below.

### A.    *Zaerpour I* – The 2013 District of New Jersey Action

In October 2013, Mr. Zaerpour filed a complaint ("*Zaerpour I*") against the Federal Bureau of Investigation ("FBI") in the U.S. District Court for the District

3

of New Jersey. (ASA-116-22.) He alleged that he had suffered over $10 trillion in damages as the victim of a market manipulation conspiracy that was designed to make FX prices "mirror in reverse the Plaintiff's trades." (ASA-117.) He asserted that the conspiratorial conduct had been happening "all the time, without discontinuity" for at least 10 years. (ASA-116, 121.) He alleged that a purported cartel in the global FX market had directed its efforts "against him individually … to block his progress." (ASA-121.) He identified "UBS, Deutsche Bank, Citigroup, Barclays, HSBC, JP Morgan, Royal Bank of Scotland and Credit Suisse"—all sued in the subsequent S.D.N.Y. actions that led to the instant appeal—as "the biggest FOREX dealers" in the supposedly manipulated market. *Id*. He alleged that the FBI was culpable for "failure to act after receiving proof of a major crime." (ASA-116.)

Plaintiff was aware of the purported misconduct he alleged in *Zaerpour I* long before he commenced that case. In **2005**—eight years earlier—he purportedly provided "undisputable statistical evidence and legal proof" regarding the alleged market manipulation to the FBI, the Office of the U.S. Attorney for the Southern District of New York, and the U.S. Department of Justice. (ASA-120.) Plaintiff also sought to publicize his allegations by issuing a press release and accompanying FAQ document in November 2006, asserting that "the International

4

Bankers" had "personally targeted" his FX trades "continuously" for the preceding four years. (ASA-124-32; Zaerpour Appx. 40-47.)

On July 23, 2014, Magistrate Judge Joseph Dickson issued a Report and Recommendation to dismiss *Zaerpour I* "because Plaintiff has no right to compel an investigation by the FBI, nor does this Court have the authority to direct the FBI to investigate." (ASA-138.) On August 11, 2014, District Judge Esther Salas adopted the Report and Recommendation and dismissed the action with prejudice. (ASA-140.)

**B.** *Zaerpour II* **– The 2021 S.D.N.Y. Action (21-cv-9680)**

On November 19, 2021, Mr. Zaerpour commenced a new action (Case No. 21-cv-9680, "*Zaerpour II*") against nine banks, imprecisely identified as "JP Morgan Chase Bank, Bank of America, UBS, Credit-Suisse, Citibank, HSBC, Goldman Sachs, Deutsche Bank, [and] Royal Bank of Scotland." (ASA-17.) The *Zaerpour II* complaint alleged that these banks had engaged in "FOREX market manipulation against him and computer intrusions, surveillance and other charges motivated by malice and criminal conspiracy against the American people." (ASA-18.) As evidence, plaintiff asserted that "[t]he statistical relationship between the Forex market at large has been an exact reverse of [his] own trades in this market all the time," and that this alleged inverse correlation shows a "conspiracy against his trades in the market." (ASA-18-19.)

The *Zaerpour II* complaint did not specify when the alleged conspiracy was supposedly in effect, but the account statements plaintiff sought to incorporate by reference reflected trading activity between 2002 and 2007. (ASA-19-20; ASA-33-100; Zaerpour Appx. 122-27.)

According to the *Zaerpour II* complaint, defendants wanted market prices to move against Mr. Zaerpour because they were opposed to "Plaintiff's plan for World Peace as communicated to the World leaders since 1985 and the people of the world." (ASA-19.) Plaintiff claimed that the alleged conspiracy against him violated antitrust laws and his constitutional rights, and that defendants had violated federal criminal laws by obstructing justice and engaging in improper surveillance of his communications. (ASA-30.)

Plaintiff did not allege that he engaged in FX transactions directly with any defendant, making the alleged conspiracy even more implausible, since defendants would not have had any visibility into his trades. Mr. Zaerpour's submissions to the district court indicated that he had traded FX with two retail brokers, MG Financial Group and Forex Capital Markets. (ASA-35-100; Zaerpour Appx. 122.)

The *Zaerpour II* complaint contained no other factual allegations regarding defendants' purported conspiracy against Mr. Zaerpour. A significant portion of the complaint consisted of general descriptions and definitions of FX trading terms

6

and concepts. The bulk of this material was apparently copied verbatim from Wikipedia.[2]

Defendants moved to dismiss the *Zaerpour II* complaint on multiple procedural and substantive grounds. On August 8, 2022, Judge Cronan granted the motion based solely on lack of proper service, finding that certified mail was not a permissible method for service on a corporate defendant under either Rule 4(h)(1) of the Federal Rules of Civil Procedure or applicable New York state laws. (ASA-141-47.) Judge Cronan determined that an extension of time to effect service was not warranted, and he did not reach the numerous merits-related defenses that had been raised in briefing as additional grounds for dismissal. (ASA-147.)

### C. *Zaerpour III* – The 2022 S.D.N.Y. Action (22-cv-7232)

Mr. Zaerpour did not (as far as Appellees are aware) file any notice of appeal seeking review of the *Zaerpour II* dismissal order. He instead sought to continue litigating the same claims by filing a new complaint (Case No. 22-cv-7232, "*Zaerpour III*") that purported to incorporate the same allegations he had just asserted in *Zaerpour II*. (ASA-149-63.)

---

[2] *Compare Zaerpour II* Compl. pp. 8-12 (ASA-24-28) with Wikipedia, *Foreign Exchange Market*, https://en.wikipedia.org/wiki/Foreign_exchange_market (Wikipedia article discussing "Determinants of exchange rates," including "Economic factors," "Political conditions," and "Market psychology").

The *Zaerpour III* complaint, filed on August 23, 2022, and this time assigned to Chief Judge Swain, included an expanded list of defendants, including entities affiliated with the 16 different banking firms involved in the instant appeal. The *Zaerpour III* complaint did not contain material new allegations. It (a) summarily asserted that "[d]efendant co-conspirator banks coordinated to manipulate foreign exchange prices and benchmark rates against the people of the United States and abroad and plaintiff" (ASA-153), (b) referenced the previously filed *Zaerpour II* complaint "for the details" (*id.*), and (c) attached an inflammatory irrelevant document entitled "The Protocols of Zion"[3] (ASA-162).

On October 24, 2022, Chief Judge Swain denied plaintiff's application for leave to proceed in forma pauperis ("IFP") and his request for appointment of pro bono counsel. (ASA-164.) On December 21, 2022, she dismissed the action based on plaintiff's failure to pay filing fees. (ASA-165-66.)

### D.     *Zaerpour IV* – The 2023 S.D.N.Y. Action (23-cv-40)

Once again, Mr. Zaerpour declined to challenge the dismissal order through an appeal and sought instead to continue pursuing his claims by commencing a new action in the district court (Case No. 23-cv-40, "*Zaerpour IV*") (ASA-167-82).

---

[3] "Protocols of the Elders of Zion … [is a] fraudulent document that served as a pretext and rationale for anti-Semitism mainly in the early 20th century." *See* Britannica, *Protocols of the Elders of Zion*, https://www.britannica.com/topic/ Protocols-of-the-Elders-of-Zion. Plaintiff has reiterated his reliance on this document in his appellate brief. Zaerpour Br. 19.

The *Zaerpour IV* complaint was filed on January 3, 2023 and was assigned to Chief Judge Swain.  The complaint included as defendants entities associated with the same 16 banking firms that had been named in *Zaerpour III*.  (ASA-174-79.) Plaintiff again declined to include material new allegations, and referred back to the previously filed *Zaerpour II* complaint for the "details" of his claims.  (ASA-171.)  There is no indication on the docket report for the *Zaerpour IV* action or elsewhere that any of the proposed defendant entities were ever served with process in the course of this action.  In light of the absence of service, no defense counsel appeared in this action in the district court at any time.[4]

On January 5, 2023, the district court denied plaintiff's application to proceed IFP and directed him to pay filing fees.  (ASA-183.)  Chief Judge Swain, acting *sua sponte*, then issued an "Order to Amend" on February 8, 2023 (after plaintiff paid the filing fees).  (ASA-184.)  She dismissed the *Zaerpour IV* complaint because plaintiff (a) could not proceed on behalf of a proposed class (the "people of the United States of America") since he is prosecuting this action *pro se* (ASA-186-87), and (b) could not satisfy Rule 8 of the Federal Rules of Civil Procedure merely by "incorporat[ing] by reference the entirety" of the prior *Zaerpour II* complaint (ASA-187).

---

[4] Had defendants been served with process, certain defendants (including the many defendant entities that were not incorporated in or do not maintain a principal place of business in New York) would have likely challenged personal jurisdiction.

Chief Judge Swain granted plaintiff leave to file an amended complaint within 30 days of her order and directed him to provide specific details regarding "who violated his federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief." (ASA-188-89.)

On February 24, 2023, plaintiff filed his *Zaerpour IV* amended complaint. (ASA-198-209.) The amended complaint re-asserted his oft-repeated allegations that he was the "target of a criminal conspiracy by the bank cartel since 2002," and that all his trades "from 2002 until 2006 … became predictive of all forex market movements at large for the entire duration of [his] forex trading activity." (ASA-202.) Plaintiff sought to recover an alleged lost principal amount of $50,000 with interest "compounded at the rate of 30% monthly for 20 years," as well as unspecified punitive damages. (ASA-203.)

The *Zaerpour IV* amended complaint was accompanied by an explanatory letter. (ASA-210.) In the letter, plaintiff stated (among other things) that he (a) had taken "into consideration all the recommendations" in the district court's order, and (b) again sought to "incorporate[] the same *facts* as in my original 2021-complaint (NYSD 21-cv-09680)." *Id*. The letter also provided various "responses" to arguments defendants previously raised in seeking dismissal of the *Zaerpour II* complaint. (ASA-210-11.) Mr. Zaerpour's responses included an

10

acknowledgement that "I was not a *direct purchaser*" of any currencies from the defendants. (ASA-211 (emphasis in original).)

On May 3, 2023, Chief Judge Swain, again acting *sua sponte*, dismissed the amended complaint as frivolous. (ASA-213-18.) She concluded that "[t]he allegations that Plaintiff's trading activity predicted the movements of the entire Forex market, due to a banking cartel conspiracy, are wholly incredible." (ASA-217.) Judge Swain also declined "to grant Plaintiff another opportunity to amend" because (a) plaintiff was already "given an opportunity to amend but has failed to cure the complaint's deficiencies," and (b) plaintiff's amended complaint gave "no indication that the defects can be cured with a further amendment." (*Id*.) Finally, Judge Swain certified "under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith" and denied IFP status for purposes of an appeal. (ASA-217.)

### E. This Appeal

On May 26, 2023, Mr. Zaerpour filed a notice of appeal with respect to the *Zaerpour IV* dismissal order and the accompanying judgment. (ASA-219.) In his opening brief, he asserts that the district court erred by failing to review or "totally ignor[ing]" the purported "statistical proof" he cited in support of his claims. Zaerpour Br. 21 (emphasis omitted). Plaintiff asks this Court to vacate the district court's order and judgment, to review all court documents *de novo*, to return the

11

case "to the lower court for trial by Jury," to provide a "refund of court fees for the Appeal and second Court filings with SDNY," and to "grant IFP status for Pro Bono Lawyer." *Id*. 23–24.

## STANDARD OF REVIEW

District courts have "inherent authority to dismiss a frivolous complaint on their own initiative." *Frein v. Pelosi*, No. 22-1063, 2023 WL 2530453, at *1 (2d Cir. Mar. 16, 2023).[5]  This Court reviews a *sua sponte* dismissal of a *pro se* complaint pursuant to this authority "without deference." *Id.*; *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 & n.2 (2d Cir. 2000).  "A complaint is frivolous 'where it lacks an arguable basis either in law or in fact,' or … when it contains either 'inarguable legal conclusion[s]' or "'fanciful factual allegation[s].'" *Frein*, 2023 WL 2530453, at *1 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

Where a district court has already provided a *pro se* plaintiff leave to amend, and does not provide further leave to amend because it is "unlikely to be productive," this decision is reviewed for abuse of discretion.  *Ganley v. City of New Yor*k, 734 F. App'x 784, 786 (2d Cir. 2018); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that

---

[5] All internal quotation marks and citations are omitted except where otherwise stated.

granting leave to amend is unlikely to be productive, … it is not an abuse of discretion to deny leave to amend."). Denial of leave to amend is proper where "[t]he problem with [the plaintiff's] causes of action is substantive" because in such circumstances a "better pleading will not cure" and "[r]epleading would … be futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's decision dismissing this action in its entirety and should also expressly affirm Chief Judge Swain's ruling refusing to grant further leave to amend. As a threshold matter, there is no evidence that process in this action was ever properly served on any defendant, and this is an independent reason for affirming the district court's dismissal. And in any event, the district court properly exercised its inherent authority to dismiss a plainly frivolous complaint *sua sponte*. Plaintiff's central claim—that he has been the victim of a long-running worldwide conspiracy engineered to disadvantage his personal FX trades—was entirely incredible and implausible, and was not supported by any coherent well-pleaded factual allegations. Nor was there any error in the district court's decision not to grant plaintiff a second opportunity to amend, as any such amendment would have been futile. There was no indication that plaintiff would have been able to remedy the inherent implausibility of his claims by restating them. And it was also abundantly clear that plaintiff's claims

13

were defective as a matter of law for many additional reasons, including because:
(a) any possible cause of action plaintiff might assert would be time-barred since
he was aware of the alleged facts underlying his claims no later than 2013, and as
early as 2005; (b) plaintiff did not transact in FX directly with defendants and
therefore lacks antitrust standing; (c) defendants are not state actors who could be
sued on constitutional tort claims; and (d) plaintiff lacks standing to prosecute
alleged violations of criminal statutes.

## ARGUMENT

## I.    PLAINTIFF'S ACTION WAS SUBJECT TO DISMISSAL BECAUSE NO PROCESS WAS PROPERLY SERVED ON ANY DEFENDANT.

It is axiomatic that "[b]efore a federal court may exercise personal
jurisdiction over a defendant, the procedural requirement of service of summons
must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d
Cir. 2006). "[T]he fact that plaintiff is proceeding *pro se* does not excuse him from
properly serving the defendants." *Ladner v. Proportional Count Assocs., Inc.*, No.
96–CV–2190 (ILG), 2001 WL 1328443, at *2 (E.D.N.Y. Sept. 17, 2001)
(collecting cases). Nor does any actual notice of an action on the part of
defendants excuse a plaintiff from complying with this fundamental procedural
obligation. *See, e.g.*, *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002)
(holding that "actual notice of suit" cannot "cure a failure to comply with the
statutory requirements for serving process").

14

Here, there is no evidence on the docket or otherwise that process for the *Zaerpour IV* action was ever served on any of the entities plaintiff seeks to sue. Mr. Zaerpour was surely aware of this requirement given that improper service was the basis for Judge Cronan's Order dismissing the *Zaerpour II* complaint. (*See* ASA-141-47.) While failure to serve process was not a basis for the dismissal order issued by the district court, this provides an independent basis for affirming Judge Swain's dismissal order. This is particularly so where, as here, plaintiff purports to sue many non-New York domiciled entities in a context where the basis for personal jurisdiction over each such entity would not necessarily be apparent.

## II. THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S COMPLAINT AS FRIVOLOUS.

This Court should also affirm Chief Judge Swain's dismissal of plaintiff's *Zaerpour IV* action—now his third attempt to advance the same "wholly incredible" claims in this Circuit—as frivolous. Plaintiff's amended complaint lacked any well-pleaded factual allegations supporting any inference that the defendant banks engaged in a multi-year conspiracy to move the trillion-dollar global FX market specifically to the detriment of plaintiff's personal trading positions. The amended complaint did not plead a single fact showing that defendants: (a) were aware of plaintiff, (b) knew that he traded FX, (c) knew who his broker was, or (d) knew what positions he held through that broker. Nor did the amended complaint allege any specific facts explaining how or why all 16

15

defendant groups supposedly reached an agreement to target him.  Such threadbare and conclusory allegations are not sufficient to state a claim for conspiracy under the antitrust laws.  *See, e.g.*, *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) (plaintiff must "allege enough facts to support the inference that a conspiracy actually existed").

Because plaintiff's claims were inherently "fanciful" and implausible, as well as totally bereft of any factual allegation support, dismissal on the merits was appropriate even in light of the special solicitude afforded to *pro se* pleadings.  *See Frein*, 2023 WL 2530453, at *1.  The district court properly determined that because plaintiff's allegations were "wholly incredible," there is "no factual predicate or legal theory on which Plaintiff can rely to state a viable civil claim arising from these allegations and assertions."  (ASA-217.)

Mr. Zaerpour asserts that the district court failed to credit "statistical proof" he submitted, apparently referring to material he included in the prior *Zaerpour II* complaint he sought to incorporate by reference in his subsequent filings.  *See* Zaerpour Br. 12-15, 21.  But nothing in that pleading articulated any coherent evidence linking defendants to any misconduct.  Plaintiff's "statistical evidence" was in the form of graphs showing exchange rate movements in two currency pairs during portions of 2005 and 2006.  (ASA-19-20.)  The graphs were annotated to flag four dates on which purported "buy" transactions occurred, four dates on

16

which purported "sell" transactions occurred, and two dates on which plaintiff may have received margin calls from his broker. (*Id*.) These graphs did not attempt to demonstrate that FX market pricing was manipulated to plaintiff's disadvantage. Instead, they only identified exchange rates for particular currency pairs on certain dates, and a small handful of dates on which plaintiff may have traded. The graphs did not purport to establish any linkage between FX market pricing and any specific actions by any defendant, much less "statistical proof" of a "reverse mirroring" of plaintiff's trades.

## III. THE DISTRICT COURT PROPERLY REFUSED TO GRANT LEAVE FOR A FURTHER AMENDMENT.

The District Court's decision also included a determination that further leave to amend was unwarranted due to futility. (ASA-217.) That finding should be expressly affirmed by this Court as well.

### A. The district court reasonably exercised its discretion in refusing to give plaintiff a fifth attempt to plead viable claims.

The district court correctly and sensibly declined to grant leave for a further amendment in this case. For all of the reasons explained above, plaintiff's liability theories and claims were conclusory, inherently implausible, and utterly lacking in supporting factual allegations. It is manifestly not an abuse of discretion for a district court to deny leave to amend a "wholly incredible" frivolous complaint where a prior opportunity to amend has already been afforded, the latest pleading

17

did nothing to remedy deficiencies, and granting leave again is thus "unlikely to be productive." *Ganley*, 734 F. App'x at 786. (ASA-217.) Indeed, the February 2023 amended complaint dismissed by Chief Judge Swain was already plaintiff's *fourth* attempt to state viable claims after the original complaints he filed across the *Zaerpour II*, *Zaerpour III*, and *Zaerpour IV* actions between late 2021 and early 2023. Plaintiff was plainly given every reasonable opportunity to present facts and allegations supporting his claims before the district court dismissed them on the merits without permitting yet another bite at the apple.

### B.  Further amendment would have been futile.

The futility of any further amendment is also apparent because there are multiple insurmountable legal defects in the claims plaintiff sought to assert. Even if plaintiff could remedy the service failure described above, and even if he could somehow nudge his theory of wrongdoing over a plausibility line, any potential claims would be foreclosed as a matter of law for numerous additional reasons, including the ones described below.

### 1.  All of plaintiff's potential claims would be time-barred.

As a matter of law, any claim plaintiff might try to assert based on the wrongdoing he is alleging would be time-barred. Plaintiff's material allegations— concerning a group of large banks supposedly conspiring to make FX prices move against his trading positions—are largely recycled from the *Zaerpour I* complaint

18

he filed against the FBI in 2013. (ASA-116-22.) Mr. Zaerpour conceded in that

2013 pleading that he had been aware of the underlying alleged misconduct since

2005. (ASA-120.)

      Given the passage of 10 years since his suit against the FBI, and 18 years

since he allegedly became aware of the conduct, any claim plaintiff might pursue

in this action would be barred by statutes of limitations. Federal antitrust claims

(*see* ASA-199) are subject to a four-year limitations period. *See US Airways, Inc.

v. Sabre Holdings Corp.*, 105 F. Supp. 3d 265, 276 (S.D.N.Y. 2015), *aff'd*, 938

F.3d 43 (2d Cir. 2019). Civil claims for securities fraud (*see* Am. Compl. at 2,

ASA-199) must be brought "not later than the earlier of (1) 2 years after the

discovery of the facts constituting the violation; or (2) 5 years after such violation."

*Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20-CV-7436 (LJL), 2022 WL

3100562, at *5 (S.D.N.Y. Aug. 3, 2022). The limitations period for constitutional

tort claims alleging a deprivation of civil rights or similar claims under 42 U.S.C.

Sections 1983 and 1985 (*see* ASA-30; Zaerpour Br. 24) is generally three years.

*See, e.g.*, *Harrison v. Harlem Hosp.*, 364 F. App'x 686, 688 (2d Cir. 2010)

(collecting cases); *Moskowicz v. Richter*, No. 17-CV-3074 (WFK)(SJB), 2019 WL

1958287, at *3 (E.D.N.Y. May 2, 2019) (collecting cases). The Electronic

Communications Privacy Act—which provides a "civil cause of action against

persons who intentionally intercept … electronic communications," another claim

plaintiff has suggested (*see* ASA-119, 30; Zaerpour Br. 16)—has a two-year

limitations period. *In re Trieligiant Corp., Inc.*, 11 F. Supp. 3d 82, 110-11 (D.

Conn. 2014), *aff'd*, 889 F.3d 116 (2d Cir. 2018).

      Plaintiff suggests that limitations periods could be tolled based on alleged

fraudulent concealment. *See* Zaerpour Br. 20.  But plaintiff himself has refuted the

showing he would need to make to support a sufficiently long period of tolling to

preserve the claims asserted in this action.  Plaintiff has been attempting to

publicize the alleged misconduct since 2005 and 2006 (ASA-120, 124).  Indeed, he

has asserted that "[a]ll the facts used to make this case" were reflected and

recorded in materials that were "sent to the FBI in 2011 and filed with the District

Court in New Jersey in 2013."  Zaerpour Br. 15.

      Nor could plaintiff reasonably demonstrate that he only recently figured out

who to sue on his claims alleging manipulation of the global FX markets.  The

press release and "FAQ" document he published in 2006 (a) asserted that "[t]he

International Bankers" were responsible for the FX market manipulation that

caused his losses, and (b) identified "UBS, Credit Suisse, JP Morgan, Citibank,

etc." as supposed "concrete examples."  (ASA-124; Zaerpour Appx. 40, 44.)  His

2013 complaint in *Zaerpour I* asserted that he had been injured by a purported

cartel in the global FX market, a market where "UBS, Deutsche Bank, Citigroup,

Barclays, HSBC, JP Morgan, Royal Bank of Scotland and Credit Suisse" were "the biggest FOREX dealers." (ASA-121.)

In addition, Mr. Zaerpour insisted in the court below that actions by the defendants in this case to manipulate FX markets "became public knowledge through media reports and thanks to lawful intercepts of encrypted chatroom conversations between forex traders at those banks" that were reflected in the allegations in "NYSD 13-cv-07789." (ASA-211.) This is the docket number for the class action proceeding entitled *In Re Foreign Exchange Benchmark Rates Antitrust Litigation* ("*In re Forex*"), before Judge Schofield in the Southern District of New York, which was commenced in November 2013. *See* S.D.N.Y. Case No. 13-cv-7789, ECF 1 (original complaint filed Nov. 1, 2013). The 16 defendant bank groups that plaintiff has attempted to sue here are the same bank groups that were sued in either 2013 or 2015 in the *In re Forex* case cited by plaintiff. If plaintiff is correct that the supposed involvement of the defendants here in manipulating FX markets "became public knowledge" when that case was filed in 2013, there is no basis for finding that material information about the identity of potential defendants was unknown to him after that date.

As plaintiff's "own allegations … undermine" his claim of fraudulent concealment, there would be no basis for tolling any applicable statute of limitations. *Ackerman v. Ackerman*, 549 F. App'x 45, 46 (2d Cir. 2014) (holding

21

that there was no fraudulent concealment where "it is evident from the pleadings that the plaintiff knew of and could have brought this action before the statute of limitations expired").

### 2. Plaintiff lacks standing to pursue an antitrust claim because he did not transact directly with defendants.

Plaintiff has attempted to assert a federal antitrust claim (ASA-199), but any such claim would be foreclosed because he is not a direct purchaser. As noted above, Mr. Zaerpour confirmed that he "was not a *direct purchaser*" from defendants; he conceded in submissions to the district court that he transacted in FX through third-party retail brokers and did not purchase foreign currency directly from defendants. (ASA-211 (emphasis in original); *see also* ASA-35-100.) As the Supreme Court noted in *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), "[o]ur decision in *Illinois Brick* [*Co. v. Illinois*, 431 U.S. 720 (1977)] established a bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers." *Id.* at 1520 (emphasis in original). Plaintiffs like Mr. Zaerpour who did not transact directly with an allegedly liable defendant lack standing to pursue federal antitrust claims. *See, e.g.*, *Simon v. KeySpan Corp.*, 694 F.3d 196, 201 (2d Cir. 2012) ("Generally, only direct purchasers have standing to bring civil antitrust claims."); *see also Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 117 (2d Cir. 2021) (holding that plaintiffs who did not purchase bonds directly from defendants lacked federal antitrust standing because

they did not suffer antitrust injuries that were proximately caused by the alleged conspiracy).[6]  Plaintiff's lack of standing bars his antitrust claim as a matter of law. *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d Cir. 2016) ("[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement [Courts] must dismiss it as a matter of law.").

> ### 3. Plaintiff's constitutional tort and Section 1983 claims are defective because the alleged defendant conduct was not state action.

Plaintiff has asserted (*see* Zaerpour Br. 24) that defendants infringed his rights under the U.S. Constitution, including Fourteenth Amendment equal protection rights, various other civil rights, and his purported "right to be happy in life."  (ASA-30.)  He appears to assert or suggest claims under the Constitution and 42 U.S.C. § 1983 (*see* Zaerpour Br. 24), which require a showing that a defendant deprived a plaintiff of constitutional rights while acting under color of state law. *See, e.g.*, *Gleason v. Scoppetta*, 566 Fed. App'x. 65, 68 (2d Cir. 2014) ("To state a claim under § 1983, a plaintiff (1) must allege the violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged

---

[6] The same rule applies to antitrust claims asserted under the state law of New Jersey, where plaintiff resides.  *See, e.g.*, *Wilson v. General Motors Corp.*, 190 N.J. 336, 339 (2007) (noting that indirect purchasers who did not purchase a product directly from defendants have no standing to assert an antitrust claim under New Jersey law).

deprivation was committed by a person acting under color of state law.")
(alterations omitted).

However, as a general matter, "the United States Constitution regulates only
the Government, not private parties." *Ciambriello v. Cnty. of Nassau*, 292 F.3d
307, 323 (2d Cir. 2002). To assert a "colorable claim" that defendants, who are
private entities, violated plaintiff's constitutional rights, "he 'must show that
[defendant's] conduct constituted state action; otherwise, there is no constitutional
violation.'" *Patterson v. J.P. Morgan Chase Bank*, No. 12–CV–2198 (SJE)(GRB),
2013 WL 182813, at *2 (E.D.N.Y. Jan. 16, 2013) (citing *Perpetual Sec., Inc. v.
Tang*, 290 F.3d 132, 137 (2d Cir. 2002) (brackets in original)). This prerequisite is
plainly not satisfied here. Plaintiff's allegation is that private banking corporations
conspired to manipulate a financial market in order to cause him to lose money on
private FX trades. Plaintiff does not even attempt to allege that "'there is such a
close nexus between the State and the challenged action'" that the private conduct
should be deemed state action. *Patterson*, 2013 WL 182813, at *2 (citing
*Perpetual Sec., Inc.*, 290 F.3d at 137).

### 4. Plaintiff lacks standing to assert violations of criminal laws.

Plaintiff has also asserted or suggested that defendants' alleged conduct
violated several federal criminal statutes. *See* ASA-199; Zaerpour Br. 24–25
(listing various alleged crimes, including "[c]omputer [c]rimes" under 18 U.S.C.

24

§ 1030; criminal securities fraud under 18 U.S.C. § 1348; "Treason" under 18 U.S.C. Chapter 115; "Hate Crimes" under 18 U.S.C. § 249; and criminal obstruction of justice under 18 U.S.C. § 1509). These claims are not "cognizable, as federal criminal statutes do not provide private causes of action." *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *accord Wright v. Waterside Plaza LLC*, No. 07 Civ. 9303 (DC), 2008 WL 872281, at *2 (S.D.N.Y. Apr. 2, 2008) ("[C]riminal laws are enforceable only by the U.S. Department of Justice …. [A] private citizen … has no authority to initiate a federal criminal prosecution of defendants for their alleged unlawful acts."), *aff'd*, 354 F. App'x 594 (2d. Cir. 2009).

\* \* \*

All of the reasons explained above provide additional support for the determination on the merits that any further leave to amend would be futile. Plaintiff should not be permitted to re-assert these defective claims in this action or any new action.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be affirmed.

Dated:     New York, New York
               November 21, 2023

Respectfully submitted,

SHEARMAN & STERLING LLP

By: /s/ Jeffrey J. Resetarits
Jeffrey J. Resetarits
599 Lexington Avenue
New York, New York 10022
Tel: (212) 848-7116

*Attorneys for Defendants-Appellees*
*Bank of America Corporation, Bank of*
*America, N.A., and Merrill Lynch,*
*Pierce, Fenner & Smith, Inc.*

SULLIVAN & CROMWELL LLP

By: /s/ Matthew A. Schwartz
Matthew A. Schwartz
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000

*Attorneys for Defendants-Appellees*
*Barclays Bank PLC, Barclays PLC*
*and Barclays Capital Inc.*

ALLEN & OVERY LLP

By: /s/ David C. Esseks
David C. Esseks
Rebecca Ann Cecchini
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 610-6300

*Attorneys for Defendants-Appellees*
*BNP Paribas (identified in the*
*Amended Complaint as "BNP Paribas*
*S.A." and "BNP Paribas Group"),*
*BNP Paribas USA, Inc., and BNP*
*Paribas Securities Corp.*

COVINGTON & BURLING LLP

By: /s/ Andrew A. Ruffino
Andrew A. Ruffino
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1097

*Attorneys for Defendants-Appellees*
*Citigroup Inc., Citibank, N.A., and*
*Citigroup Global Markets Inc.*

26

CAHILL GORDON & REINDEL LLP

By: /s/ Herbert S. Washer
Herbert S. Washer
David G. Januszewski
Jason M. Hall
Miles Wiley
32 Old Slip
New York, New York 10005
Tel: (212) 701-3435

*Attorneys for Defendants-Appellees
Credit Suisse Group AG, Credit Suisse
International, and Credit Suisse
Securities (USA) LLC*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: /s/ Rishi Zutshi
Rishi Zutshi
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2085

*Attorneys for Defendants-Appellees
The Goldman Sachs Group, Inc. and
Goldman, Sachs & Co. LLC*

KING & SPALDING LLP

By: /s/ Alexander Kazam
Alexander Kazam
1700 Pennsylvania Ave., NW
Suite 900
Washington, DC 20006
Tel: (202) 626-2992

*Attorneys for Defendants-Appellees
Deutsche Bank AG and Deutsche Bank
Securities Inc.*

LOCKE LORD LLP

By: /s/ J. Matthew Goodin
J. Matthew Goodin
Julia C. Webb
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
Tel: (312) 443-0472

Roger B. Cowie
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Tel: (214) 740-8614

*Attorneys for Defendant-Appellee
HSBC Bank USA, N.A.*

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/ Boris Bershteyn
Boris Bershteyn
One Manhattan West
New York, New York 10001
Tel: (212) 735-3834

*Attorneys for Defendants-Appellees*
*JPMorgan Chase & Co., JPMorgan*
*Chase Bank, N.A., and J.P. Morgan*
*Securities LLC*

WACHTELL, LIPTON, ROSEN &
KATZ

By: /s/ Jonathan M. Moses
Jonathan M. Moses
Justin L. Brooke
51 West 52nd Street
New York, New York 10019
Tel: (212) 403-1388

*Attorneys for Defendants-Appellees*
*Morgan Stanley, Morgan Stanley &*
*Co., LLC, and Morgan Stanley & Co.*
*International plc*

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

By: /s/ Joseph J. Bial
Joseph J. Bial
2001 K Street, NW
Washington, DC 20006
Tel: (202) 223-7300

*Attorneys for Defendants-Appellees*
*MUFG Bank, Ltd. and MUFG*
*Securities Americas Inc.*

DAVIS POLK & WARDWELL LLP

By: /s/ Paul S. Mishkin
Paul S. Mishkin
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4292

*Attorneys for Defendants-Appellees*
*NatWest Markets Securities Inc. and*
*the Royal Bank of Scotland PLC (n/k/a*
*NatWest Markets Plc)*

MOORE AND VAN ALLEN PLLC

By: /s/ Mark A. Nebrig
Mark A. Nebrig
James P. McLoughlin, Jr.
100 N. Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Tel: (704) 331-3602

*Attorneys for Defendants-Appellees*
*Royal Bank of Canada and RBC*
*Capital Markets, LLC*

LINKLATERS LLP

By: /s/ James R. Warnot, Jr.
James R. Warnot, Jr.
Patrick C. Ashby
Nicole E. Jerry
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 903-9000

Adam S. Lurie
601 13th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 654-9200

*Attorneys for Defendants-Appellees*
*Société Générale (identified in the*
*Amended Complaint as "Societe*
*Generale S.A.") and SG Americas*
*Securities LLC*

HERBERT SMITH FREEHILLS
NEW YORK LLP

By: /s/ Marc J. Gottridge
Marc J. Gottridge
450 Lexington Avenue
New York, New York 10017
Tel: (917) 542-7600

*Attorneys for Defendants-Appellees*
*Standard Chartered Bank and*
*Standard Chartered Securities (North*
*America), LLC (formerly Standard*
*Chartered Securities (North America),*
*Inc.)*

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Eric J. Stock
Eric J. Stock
Seth M. Rokosky
200 Park Avenue
New York, New York 10166
Tel: (212) 351-2301

*Attorneys for Defendants-Appellees*
*UBS AG and UBS Securities LLC*

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Rules 32(a)(7) and 32(3) of the Federal Rules of Appellate Procedure, and this Court's Local Rule 32.1(a)(4)(A), because it contains 5,811 words, exclusive of the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman and 14 point font.

Dated:     New York, New York
           November 21, 2023

                              /s/ Andrew A. Ruffino

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

The undersigned, an attorney duly admitted to practice law before this Court, hereby also certifies under penalty of perjury, that on November 21, 2023, I caused a true copy of the below:

- **Brief Of Defendants-Appellees**

- **Appellees' Supplemental Appendix**

to be served by first-class mail upon:

Soheil Zaerpour
16-C Thornton Place
Clifton, NJ 07102-3360

Dated:      New York, New York
            November 21, 2023

                              /s/ Andrew A. Ruffino